IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CEDRIC GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV 20-323-RAW-JAR |
| ) | |
| VICKIE CAESAR and ) | |
| JIM FARRIS, ) | |
| ) | |
| Defendants. ) | |

### OPINION AND ORDER

This action is before the Court on Defendants' motion to dismiss or for summary judgment (Dkt. 19). The Court has before it for consideration Plaintiff's complaint (Dkt. 1), Defendants' motion (Dkt. 19), and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 18). Plaintiff has not filed a response to Defendants' motion.

Plaintiff, a former inmate who was in the custody of the DOC when the incident at issue occurred, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Howard McLeod Correctional Center (HMCC) in Atoka, Oklahoma. The defendants are Vickie Caesar, SAT Program Instructor, and Jim Farris, HMCC Warden.

Defendants allege Plaintiff has failed to exhaust the administrative remedies for his claims. Plaintiff asserts there is no remedy under the grievance policy that allows for the state or the prison facility to compensate him for damages or injuries caused by a constitutional violation.

**Background**

Plaintiff alleges that on or about November 21, 2019, he was sitting in the SAT

classroom, when the floor collapsed and he fell through, injuring his hip, leg, and back. (Dkt. 1 at 4). He asserts that prior to the incident, Defendant Caesar had lodged numerous complaints about the classroom's sagging floor. *Id.* Plaintiff claims he immediately was taken to the medical unit, where he received an injection in his back for pain and a prescription muscle relaxant. *Id.* at 5. He alleges he still is on medication, is suffering a great deal of pain, and has had numerous physician visits. *Id.* He is seeking compensatory and punitive damages. *Id.*

**Standard of Review for Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

When a defendant asserts an affirmative defense—such as the failure to exhaust administrative remedies—in a motion for summary judgment, he or she "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted when the evidence is viewed in the light most favorable to the plaintiff." *Kramer v. Wasatch Cnty. Sheriff's Office*, 743 F.3d 726, 746 (10th Cir. 2014) (internal quotation marks and citation

omitted). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact," *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997), or show that the remedies were unavailable to him as a result of the actions of prison officials, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). In the absence of either showing, the defendant would be entitled to summary judgment on the affirmative defense. *See id.*

**Discussion**

The Court has carefully reviewed the record and construes Plaintiff's pro se pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). This relaxed standard, however, does not relieve his burden of alleging sufficient facts on which a recognized legal claim could be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

The special report states that on July 18, 2019, Defendant Caesar submitted a work order that stated: "Areas of floor are buckling. Some areas are raised and one area has dropped some. Tiles and [sic] cracking and coming up in places." (Dkt. 18-2 at 2). An update to the work order dated July 29, 2019, indicated that the work order was in progress, and the floor was deemed "ok, per Warden Farris . . . ." (Dkt. 18-3 at 2).

An Incident Report, dated November 20, 2019, states that Plaintiff was seen in the HMCC medical unit by Charity Rosenthal, RN, "after falling through the floor in substance abuse class." (Dkt. 18-4 at 2). The report indicated Plaintiff complained of "slight pain to right lower leg" and was given an ice pack. *Id.* Nurse Rosenthal stated in her report that no injury or abrasion was noted. *Id.* Plaintiff's chart notes also state that Plaintiff's leg went "through the floor halfway up right calf right leg." (Dkt. 18-8 at 18). "No open wounds noted. . . . Pt denies needing assistance ambulating and states it is just a little sore." *Id.* Plaintiff was given an ice pack and a box of ibuprofen. *Id.*

On November 21, 2019, Plaintiff submitted a Request for Health Services (RHS), stating he was in pain. (Dkt. 18-5 at 2). He was seen in the clinic, *id.,* where he was prescribed Toradol and Flexeril (Dkt. 18-13 at 3).

On December 5, 2019, Plaintiff submitted another RHS, stating he still had pain in his lower back, hip, and leg. (Dkt. 18-6 at 2). An appointment was scheduled, and he was seen on December 6, 2019. (Dkt. 18-8 at 13). Plaintiff requested an X ray of his hips and lower back. *Id.* In response, an X ray and Robaxin were ordered, as well as a continuation of naproxen. *Id.*

On December 13, 2019, Plaintiff had X rays, and the results indicated no evidence of fracture or dislocation. (Dkt. 18-7 at 2). He also was found to have mild osteoarthritis. *Id*. On December 17, 2019, Plaintiff was notified that he had mild arthritis in his hips and mild changes in the lumbar region of his back and that Robaxin and naproxen should help with pain. (Dkt. 18-8 at 10).

On January 3, 2020, Plaintiff submitted a RHS requesting a muscle relaxant, and an appointment was scheduled. (Dkt. 18-6 at 3). On January 6, 2020, Plaintiff asked for a renewal of his back medication which was granted. (Dkt. 18-6 at 4; Dkt 18-8 at 8-9).

On August 4, 2020, Plaintiff asked for another renewal of his back medication, and an appointment was scheduled. (Dkt. 18-6 at 5). On August 7, 2020, Plaintiff was seen for a complaint of lumbar spasms, and his prescription for Robaxin was renewed. (Dkt. 18-8 at 2). According to the Oklahoma DOC Offender website at https://offender.doc.ok.gov, Plaintiff was discharged from DOC custody on June 29, 2021.[1]

**Discussion**

Defendants allege Plaintiff has failed to exhaust the administrative remedies for any

---

[1] The Court takes judicial notice of the offender website pursuant to Fed. R. Civ. P. 201. *See Triplet v. Franklin*, 365 F. App'x 86, 92, 2010 WL 409333, at *6 n.8 (10th Cir. Feb. 5, 2010).

of his claims. Pursuant to the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). Exhaustion is required for all inmates seeking relief in federal district court, "even where the relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). *See also Booth*, 532 U.S. at 741. The PLRA's exhaustion requirement is mandatory, and the courts are not authorized to dispense with it. *Beaudry v. Corr. Corp. of America*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). Courts will only excuse failure to exhaust if prison officials impede the prisoner's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident (Dkt. 19-1 at 7). If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form. *Id.* at 7-9. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the reviewing authority (facility head), asserting only the issue of the lack of response to the RTS. *Id*. at 2, 9. If the grievance is of an emergency or sensitive nature, it can be submitted directly to the reviewing authority without

5

informal resolution. *Id.* at 16.

If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. *Id.* at 9-11. Inmates must submit the grievance to the facility reviewing authority or facility correctional health services administrator, whichever is appropriate. *Id*. at 10. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority (ARA) or the Medical ARA, whichever is appropriate. *Id*. at 13-16. The administrative process is exhausted only after all of these steps have been taken. *Id*. at 16.

Mark Knutson, Manager of the DOC's ARA, states by affidavit in the special report that he has reviewed the ARA records for Plaintiff, and no grievances or grievance appeals concerning Plaintiff's fall through the floor, any safety issues at HMCC, or any other issues, were found. (Dkt. 19-14 at 2). Further, to the extent Plaintiff is claiming he did not receive adequate medical care after he fell through the floor, he did not submit any proper or improper grievance appeals to the DOC's Medical ARA, according to the affidavit by Cheri McCleave-Redpath, Nurse Manager of DOC's Medical Services administrative office. (Dkt. 18-10 at 2). Therefore, the Court finds Plaintiff did not exhaust the administrative remedies for any of the claims in this lawsuit. Further, Plaintiff does not allege that prison officials prevented him from exhausting his administrative remedies.

After careful review, the Court finds that when viewed in the light most favorable to Plaintiff, there is no genuine dispute as to any material fact concerning Plaintiff's failure to exhaust the administrative remedies for the claims in his complaint. Therefore, Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

**ACCORDINGLY,** Defendants' motion for summary judgment (Dkt. 19) is GRANTED and this action is DISMISSED for Plaintiff's failure to exhaust administrative

remedies, pursuant to 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED** this 12th day of September 2022.

Ronald A. White
United States District Judge
Eastern District of Oklahoma